**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**


**WILLIAM FROHNAPFEL, et al.**,

      Plaintiffs,

**v.**                                       **Civil Action No. 5:14-CV-45
(BAILEY)**

**ARCELORMITTAL WEIRTON LLC, et al.**,

      Defendants.


## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

      Presently pending before this Court is Defendants ArcelorMittal Weirton LLC ("AM

Weirton") and ArcelorMittal USA LLC's Motion to Dismiss [Doc. 7], filed April 11, 2014.  By

Order entered July 7, 2014, this Court referred a question of law to the Supreme Court of

Appeals of West Virginia, deferred ruling on other issues and stayed this case pending

resolution of the certified issue of law [Doc. 30].  This Court, now having the benefit of the

West Virginia Supreme Court's decision will deny the Motion.

**I.**    **Background**

      This action arises from plaintiff[1] William Frohnapfel's allegedly unlawful termination

from his employment with AM Weirton, a tin plate manufacturer located in Weirton, West

Virginia.[2]  At the time of his termination, plaintiff's employment was governed by a collective

bargaining agreement between his union, the United Steel, Paper and Forestry, Rubber

_____

[1] Throughout this opinion, this Court's use of the word "plaintiff" refers to Mr. Frohnapfel.

[2] The following facts are summarized from plaintiff's Complaint.  *See* [Doc. 1-1].

1

Manufacturing, Energy, Allied Industrial and Service Workers International Union, and defendant ArcelorMittal USA, AM Weirton's parent company.  *See* [Doc. 8-1].

Prior to his termination, plaintiff worked as a Technician II Operator in AM Weirton's Environmental Control/Utilities Department.  Plaintiff's department was charged with overseeing B-Outfall, a portion of AM Weirton's manufacturing operation located on the Ohio River.  B-Outfall discharges hazardous byproducts from its manufacturing process directly into the Ohio River.  As such, B-Outfall is governed by a permit issued under the West Virginia Water Pollution Control Act ("WPCA"), W.Va. Code §§ 22-11-1 *et seq.*, which regulates the discharge of hazardous materials at B-Outfall, imposes environmental monitoring obligations upon defendants, and requires defendants to report to the West Virginia Department of Environmental Protection ("WVDEP") regarding discharges at B-Outfall.

According to plaintiff, defendants "viewed him as a watch dog for environmental compliance and a potentially dangerous whistleblower in regard to environmental violations."  Plaintiff alleges he repeatedly brought violations of defendants' WPCA permit to defendants' attention and on one occasion reported a violation to the WVDEP, causing defendants to take increasingly punitive adverse actions against him and ultimately resulting in his termination.  Specifically, plaintiff alleges that:

- In February 2009, plaintiff complained to management after being instructed to "scrape labels off barrels and replace them with new labels due to expiration issues";

- In March 2009, plaintiff informed management that a probe was being placed in a buffer in order to conceal certain PH issues;

- In June 2010, plaintiff truthfully responded to an inquiry from the WVDEP concerning

2

the dumping of hazardous waste and was thereafter "summoned to the Office of the Defendants' highest ranking management official located in Weirton";

- In November 2010, plaintiff complained regarding the inadequacy of hazardous material incident training, and was thereafter "chastised," "disciplined," and disqualified from receiving a promotion;

- In January 2011, plaintiff expressed concern regarding the lack of a containment area for "Prussian Blue," a hazardous waste; and

- In June 2012, plaintiff questioned a third-party vendor's practices associated with the removal of hazardous waste and was thereafter harshly disciplined and temporarily suspended from work.

The events immediately preceding plaintiff's termination occurred in April 2013. Early that month, a piece of machinery used at B-Outfall broke down. Because the unusable machinery was causing hazardous waste to accumulate at B-Outfall, a group of employees, including plaintiff, developed a plan to repair the piece of machinery. The group asked plaintiff to present their plan to management. Plaintiff did so, but was informed by management that a different plan to fix the machinery was already in place. Later, while telling the other employees what had transpired, plaintiff remarked, apparently in reference to management, that "opinions are like assholes, everybody has one, some people have two." Unbeknownst to plaintiff, a nearby open microphone broadcast his remark throughout the entire Environmental Control/Utilities Department. Following the accidental broadcast, defendants suspended plaintiff, and a few days later, on April 18, 2013, terminated plaintiff's employment.

Plaintiff filed a grievance contesting his termination in accord with procedures set

forth in the collective bargaining agreement governing his employment. The grievance, which does not pursue the cause of action asserted in this lawsuit, is presently scheduled for arbitration.

On February 26, 2014, plaintiff and his wife initiated this action by filing their Complaint in the Circuit Court of Hancock County, West Virginia, alleging one count of state-law retaliatory discharge and one count of loss of consortium.[3] Defendants thereafter removed the case to this Court, invoking this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. The instant Motion to Dismiss followed.

## II.  Legal Standard

### A.  Fed. R. Civ. P. 12(b)(1)

In general, a defendant's jurisdictional challenge under Rule 12(b)(1) can take one of two forms: factual or facial. ***Kerns v. United States***, 585 F.3d 187, 192 (4th Cir. 2009). A factual challenge attacks the truth-in-fact of the plaintiff's jurisdictional allegations. *Id.* A facial challenge, by contrast, attacks the legal sufficiency of the plaintiff's jurisdictional allegations. *Id.* Where the defendant—as defendants have done in this case[4]—mounts

---

[3] A loss of consortium claim is derivative of the underlying tort claim; thus, if Mr. Frohnapfel's retaliatory discharge claim fails, Mrs. Frohnapfel's loss of consortium claim fails as well. *See **State ex rel. Smalls v. Clawges***, 231 W.Va. 301, 745 S.E.2d 192 (2013) (explaining that a loss of consortium claim is merely incidental to a primary cause of action).

[4] Defendants bring their Motion to Dismiss exclusively pursuant to Rule 12(b)(6). *See* [Doc. 7 at 1]. Defendants' claim that plaintiff's cause of action is subject to ***Garmon*** preemption, however, is a challenge to this Court's subject matter jurisdiction, as where a claim is preempted under ***Garmon***, federal courts must defer to the exclusive jurisdiction of the National Labor Relations Board. *See, e.g.*, ***Lontz v. Tharp***, 413 F.3d 435, 442 (4th Cir. 2005) (citing ***San Diego Building Trades Council v. Garmon***, 359 U.S. 236, 245 (1959)). Defendants' motion is therefore properly characterized as raising both Rule 12(b)(1) and Rule 12(b)(6) grounds for dismissal, and this Court will construe it accordingly. *See, e.g.*, ***Trollinger v. Tyson Foods, Inc.***, 370 F.3d 602, 606 (6th Cir. 2004) (defendant moved to

4

a facial challenge under Rule 12(b)(1), the plaintiff is afforded the same procedural protections he would receive under Rule 12(b)(6): all facts alleged in the complaint are taken as true, and all reasonable inferences are drawn in the plaintiff's favor. *See id.* (citing ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982)). Consequently, to avoid dismissal on a facial Rule 12(b)(1) challenge, plaintiff's complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *See **Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) (quoting ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007)).

### B.    Fed. R. Civ. P. 12(b)(6)

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court accepts all well-pled facts in the complaint as true and construes those facts in the light most favorable to the plaintiff. ***Iqbal***, 556 U.S. at 678–79; ***Adcock v. Freightliner LLC***, 550 F.3d 369, 374 (4th Cir. 2008). Legal conclusions, recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement do not constitute well-pled facts for Rule 12(b)(6) purposes. *See **Iqbal***, 556 U.S. at 678.

Ultimately, a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" ***Id.*** (quoting ***Twombly***, 550 U.S. at 570). Facial plausibility is established where the facts alleged in the complaint "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Id.*** This

---

dismiss under Rule 12(b)(1), arguing ***Garmon*** preemption).

context-specific test does not require "detailed factual allegations," but the complaint must produce an inference of liability strong enough to nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. A court ruling on a motion to dismiss may consider any documents integral to and relied on in the complaint, regardless of whether those documents are actually attached to the complaint. *See **Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.**, 367 F.3d 212, 234 (4th Cir. 2004).

## III.    Discussion

Defendants argue that plaintiff's Complaint must be dismissed for three reasons: first, because this Court lacks subject matter jurisdiction[5] as plaintiff's claim is subject to preemption by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, also known as *Garmon* preemption; second, because plaintiff's claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and, properly characterized as a § 301 claim, must be dismissed for failure to exhaust; and third, because plaintiff has failed to state a claim for retaliatory discharge as defined by ***Harless v. First National Bank***, 162 W.Va. 116, 246 S.E.2d 270 (1978), as plaintiff's Complaint neither satisfies federal pleading standards nor alleges a substantial West Virginia public policy upon which his ***Harless*** claim may be predicated.

Plaintiff responds that neither form of preemption applies, and that his ***Harless*** claim is properly founded upon the substantial West Virginia public policy set forth in the WPCA. As this matter presented a novel question of West Virginia law—whether West Virginia recognizes a claim for ***Harless*** retaliatory discharge founded upon the WPCA— this Court

---

[5] *See supra* note 3.

certified the question to the Supreme Court of Appeals of West Virginia. As briefly discussed below, this Court further finds that adjudicating the applicability of either preemption doctrine would be premature, as both preemption analyses require a close examination of the underlying cause of action. As such, this Court deferred ruling upon defendants' Motion and stayed this action pending final decision on the certified question.

### A. *Garmon* Preemption

*Garmon* preemption, which takes its name from the Supreme Court's explanation of the doctrine in ***San Diego Building Trades Council v. Garmon***, 359 U.S. 236, 245 (1959), divests both state and federal courts of jurisdiction over labor disputes involving employee conduct arguably protected or prohibited by the NLRA. ***Lontz v. Tharp***, 413 F.3d 435, 442 (4th Cir. 2005). Jurisdiction over such disputes is vested exclusively in the National Labor Relations Board, with the goal of ensuring uniformity in the construction of federal labor law and preventing the frustration of national labor policy. ***Garmon***, 359 U.S. at 242.

*Garmon* preemption is inapplicable, however, when the employee conduct at issue "is only a peripheral concern of the NLRA" or "touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act." ***Richardson v. Kruchko & Fries***, 966 F.2d 153, 156 at n.* (4th Cir. 1992) (quoting ***Local 926, Int'l Union of Operating Eng'rs, AFL-CIO v. Jones***, 460 U.S. 669, 676 (1983)). The question whether a state's regulation of conduct should be allowed because of the deeply rooted nature of the state interest "involves a sensitive balancing of any harm to the

regulatory scheme established by Congress . . . and the *importance of the asserted cause of action to the state as a protection to its citizens.*" **Jones**, 460 U.S. at 676 (emphasis added).

Because a complete analysis of the applicability of **Garmon** preemption to this case involves a careful balancing of the regulatory scheme created by the NLRA with the importance of plaintiff's cause of action to West Virginians—and, particularly with respect to the potential applicability of the "deeply rooted" exception, necessitates an examination of the public policy supporting plaintiff's claim—this Court found that a ruling on the **Garmon** issue at that time would have been premature. This Court therefore deferred resolution of the **Garmon** preemption question until such time as the Supreme Court of Appeals of West Virginia renders a final decision on the question of law certified.

**B.     Labor Management Relations Act § 301 Preemption**

 Section 301 of the LMRA preempts state law wherever resolution of a state-law employment claim turns upon construction of a CBA or is "inextricably intertwined with consideration of [its] terms." **Foy v. Giant Food Inc.**, 298 F.3d 284, 287 (4th Cir. 2002) (citing **Allis-Chalmers Corp. v. Lueck**, 471 U.S. 202, 209 (1985)). Because "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from precisely the same set of facts could be pursued)" that determines whether a claim is preempted, **Livadas v. Bradshaw**, 512 U.S. 107, 123–24 (1994) (internal citations omitted), "the preemptive effect of § 301 depends upon the elements of the purported state-law claim." **Childers v. Chesapeake & Potomac Tel. Co.**, 881 F.2d 1259 (4th Cir. 1989). Stated differently, "a colorable state-law cause of

action is a predicate to a § 301 preemption claim." *Washington v. Union Carbide Corp.*, 870 F.2d 957, 959 (4th Cir. 1989).

Prior to receipt of the resolution of the certified question, it was not yet clear whether plaintiff had alleged a colorable state-law cause of action.  This Court found it would be speculative to rule on the applicability of § 301 preemption at that time.  *Cf. Childers*, 881 F.2d at 1262 (holding that where a complaint plainly fails to state a cause of action under state law, it is within the district court's discretion to dismiss the cause of action entirely).  Accordingly, this Court deferred resolution of the § 301 preemption question until such time as the Supreme Court of Appeals of West Virginia rendered a final decision on the question of law certified.

### C.  Viability of Plaintiff's *Harless* Retaliatory Discharge Claim

Defendants argue that plaintiff's retaliatory discharge claim must be dismissed for two reasons: first, because plaintiff's Complaint fails to satisfy federal pleading standards, and second, because plaintiff's *Harless* claim cannot be predicated upon the WPCA.  This Court found that plaintiff's Complaint meets federal pleading standards, and certified the question whether the WPCA can support plaintiff's *Harless* claim to the Supreme Court of Appeals of West Virginia.

West Virginia's tort of retaliatory discharge evolved as an exception to the rule that an employer may terminate an at-will employee[6] at any time.  *Swears v. R.M. Roach &*

---

[6] There appears to be no dispute as to whether plaintiff is an at-will employee.  This Court notes that at least one circuit court has found that an employee whose employment is governed by a collective bargaining agreement that provides a "proper cause" termination guarantee and arbitral remedies is not an at-will employee, and is thus not entitled to maintain a retaliatory-discharge tort claim.  *See Lamb v. Briggs Mfg., a Div. of Celotex*

*Sons, Inc.*, 225 W.Va. 699, 703–04, 696 S.E.2d 1, 5–6 (2010) (citing *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955)) (describing the evolution of the tort). The tort was first carved out in *Harless v. First National Bank*, where the Supreme Court of Appeals of West Virginia held that "where the employer's motivation for the discharge is to contravene *some substantial public policy principle*, then the employer may be liable to the employee" notwithstanding the general at-will termination rule. Syl., 162 W.Va. 116, 246 S.E.2d 270 (1978) (emphasis added).

Thus, a *Harless* retaliatory discharge claim cannot lie absent a substantial West Virginia public policy allegedly violated in terminating the employee. The determination whether a substantial public policy exists is a question of law for the court. *Page v. Columbia Natural Res.*, 198 W.Va. 378, 384, 480 S.E.2d 817, 823 (1996). Although courts may look to "established precepts in [the West Virginia] constitution, legislative enactments, legislatively approved regulations, and judicial opinions" in determining whether a substantial public policy exists, *Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W.Va. 371, 377, 424 S.E.2d 606, 612 (1992), *Harless* retaliatory discharge claims "are generally based on a public policy articulated by the legislature." *Swears*, 225 W.Va. at 704 (citing *Shell v. Metro. Life Ins. Co.*, 183 W.Va. 407, 413, 396 S.E.2d 174, 180 (1990)). Importantly, the public policy relied upon must not only exist—it must be *substantial*. *Feliciano v. 7-Eleven, Inc.*, 210 W.Va. 740, 745, 559 S.E.2d 713, 718 (2001).

Additionally, "[i]nherent in the term 'substantial public policy' is the concept that the

---

*Corp.*, 700 F.2d 1092, 1093–94 (7th Cir. 1983) (construing Illinois law). This Court has found no West Virginia authority addressing the question.

policy will provide specific guidance to a reasonable person": the public policy must provide fair notice as to what conduct is or is not prohibited. *Kanagy v. Fiesta Salons*, 208 W.Va. 526, 530, 541 S.E.2d 616, 620 (2000) (quoting Syl. pt. 3, *Birthisel*, 188 W.Va. at 377). In other words, "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." *Birthisel*, 188 W.Va. at 377.

In certifying the issue to the West Virginia Supreme Court, this Court noted that there is a strong argument that the WPCA articulates a public policy sufficient to support a *Harless* retaliatory discharge claim. The WPCA sets forth a specific public policy: maintaining "reasonable standards of purity and quality" of West Virginia water. W.Va. Code § 22-11-2. That public policy was articulated by the West Virginia legislature. *See Swears*, 225 W.Va. at 704 (noting that most West Virginia retaliatory discharge cases are predicated upon a statement of public policy by the West Virginia legislature). In furtherance of that public policy, the Act regulates manufacturers' ability to discharge hazardous material into West Virginia waterways by issuing permits, and noncompliance with a permit subjects a violator to heavy civil fines and potential criminal penalties. *See id.* at §§ 22-11-8(b)(4), -22(a), -24(a). Moreover, while the statement of public policy is itself broad, the requirements imposed upon employers who hold permits issued pursuant to the WPCA provide specific guidance as to permitted and prohibited conduct. *See Kanagy*, 208 W.Va. at 530 (citing *Birthisel*, 188 W.Va. at 377) (recognizing that an employer should not be exposed to liability where a public policy standard is vague). Finally, the purpose of the Act could be frustrated if employees who reported violations of

the Act to environmental authorities and were terminated for doing so were left without a remedy.

In making the certification, this Court noted that the Fourth Circuit, however, has specifically declined to expand the *Harless* cause of action by recognizing novel theories of substantial public policy absent a clear statement from the Supreme Court of Appeals of West Virginia. *Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 84–85 (4th Cir. 1990) (refusing to recognize plaintiff's novel theory and noting that the case "illustrates one of the tremendous drawbacks of federal diversity jurisdiction").

Since *Tritle*, several courts in this Circuit have certified questions concerning novel bases for *Harless* retaliatory discharge claims to the Supreme Court of Appeals of West Virginia. *See, e.g.*, *Kanagy*, 208 W.Va. at 527 (answering certified question from the United States District Court for the Southern District of West Virginia); *Lilly v. Overnight Transp. Co.*, 188 W.Va. 538, 538–39, 425 S.E.2d 214, 214–15 (1992) (answering certified question from the Fourth Circuit). As the Supreme Court of Appeals of West Virginia has not yet confronted the question whether the WPCA articulates a substantial public policy such that it may form the basis of a *Harless* retaliatory discharge claim, this Court certified the issue to the West Virginia Supreme Court.

In an Opinion issued April 10, 2015, the Supreme Court of Appeals of West Virginia issued its opinion answering this Court's certified question and finding that "the West Virginia Water Pollution Control Act establishes a substantial public policy for purposes of undergirding a policy-based retaliatory discharge claim where an employee is allegedly discharged for reporting violations of a permit issued under that Act and making complaints

to his employer about those permit violations." ***Frohnapfel v. Arcelormittal USA LLC***, ___ W.Va. ___, ___ S.E.2d ___, 2015 WL 1720982 (W.Va. April 10, 2015).

Syllabus point 5 of the Opinion states "An employee who alleges he or she was discharged for reporting violations of a permit issued under authority of the West Virginia Water Pollution Control Act, W.Va. Code §§ 22–11–1 to –30 (2014), and making complaints to his/her employer about those permit violations, has established the predicate substantial public policy required to *prima facie* prove that the employer's motivation for the discharge was the contravention of public policy. *See **Harless v. First Nat'l Bank**,* 162 W.Va. 116, 246 S.E.2d 270 (1978)."

The answer to the certified question certainly resolves one of the three bases articulated to support the motion to dismiss. A plaintiff may predicate a ***Harless*** claim on the WPCA.

With respect to the asserted § 301 preemption, the Supreme Court in ***Lingle v. Norge Div. of Magic Chef, Inc.***, 486 U.S. 399, held that an application of state law is pre-empted by § 301 only if such application requires the interpretation of a collective bargaining agreement.

The ***Magic Chef*** Court also reviewed the elements of a retaliatory discharge claim and determined that proof of none of the elements turned upon the interpretation of the collective bargaining agreement. In West Virginia, the elements of a retaliatory discharge claim are (1) that the plaintiff engaged in protected activity; (2) that the defendant was aware of the protected activities; (3) that the plaintiff was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation); (4) that plaintiff's

discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation. *CSX Transp. v. Smith*, 229 W.Va. 316, 343, 729 S.E.2d 151, 178 (2012). As in *Magic Chef*, none of these elements require contractual interpretation. None of the elements turn on the meaning of a contractual provision.

In *Martin Marietta Corp. v. Maryland Comm. on Human Relations*, 38 F.3d 1392 (4th Cir. 1994), the Fourth Circuit, discussing *Magic Chef*, said:

> In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399 (1988), the Court found that a unionized employee's state law suit alleging retaliatory discharge for filing a workers' compensation claim was not preempted, because the state law remedy was "independent" of the CBA, in that "resolution of the state-law claim does not require construing the collective bargaining agreement." *Id*. at 407 (footnote omitted). The Court also held that even if dispute resolution under a CBA and under state law would require analysis of the identical set of facts, the claim is still considered to be "independent" of the CBA, if it can be resolved without interpreting the agreement. *Id.* at 409–10.

38 F.3d at 1397-98.

The Fourth Circuit also discussed at length the Sixth Circuit's decision in *Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (6th Cir.) (*en banc*), *cert. denied*, 493 U.S. 992 (1989), noting that the Sixth Circuit "focused on the point that to establish the retaliatory discharge claim at issue, the court must review purely factual questions pertinent to the conduct of the employee and the conduct and motivation of the employer, neither of which

necessitates interpretation of CBA terms. 879 F.2d at 1331 (citing *Lingle,* 486 U.S. at 407)." 38 F.3d at 1402.

Similarly, Judge Stamp, in ***Goddard v. Brand Scaffold Rental & Erection of Pittsburgh, PA***, 2008 WL 4889618 (N.D. W.Va. November 12, 2008), stated:

> This Court is not persuaded by Brand Scaffold's argument that the plaintiff's claims are preempted by the LMRA. Section 301 of the LMRA authorizes federal courts to hear suits for violations of contracts between an employer and a labor organization or between labor organizations. 29 U.S.C. § 185(a). This section also directs the federal courts to fashion a body of federal common law resolving labor disputes and preempts any claims under state law which require the interpretation of a collective bargaining agreement. *See* ***Lingle v. Norge Div. of Magic Chef, Inc.,*** 486 U.S. 399, 413 (1988). However, "not every dispute concerning employment or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." ***Allis–Chalmers Corp. v. Lueck,*** 471 U.S. 202, 211 (1985). Only if a state law claim is "inextricably intertwined with consideration of the terms of the labor contract" is the claim preempted. *Id.* at 213. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." ***Livadas v. Bradshaw,*** 512 U.S. 107, 124 (1994).

2008 WL 4889618 at *2.

Since resolution of the plaintiff's retaliatory discharge claim will not require interpretation of the collective bargaining agreement, there is no § 301 preemption.

The final ground asserted by the defendant in seeking dismissal is **Garmon** preemption. As explained in **Domnister v. Exclusive Ambulette, Inc.**, 607 F.3d 84 (2d Cir. 2010):

> In **Garmon**, the Supreme Court held that "[w]hen an activity is arguably subject to [§ ]7 or [§ ]8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." 359 U.S. at 245. **Garmon** preemption presents an issue of law which we review *de novo. See* **Healthcare Ass'n of N.Y. State, Inc. v. Pataki**, 471 F.3d 87, 94 (2d Cir. 2006). We "begin by identifying whether any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of [the action]. Next, we must decide whether the controversy is identical to one that the aggrieved party could bring (or induce its adversary to bring) before the NLRB." *Id.* at 96.

> Broadly stated, sections 7 and 8 govern "concerted activities" and "unfair labor practices," respectively. **Bldg. Trades Employers' Educ. Ass'n v. McGowan**, 311 F.3d 501, 508 (2d Cir. 2002). Section 7 protects workers' rights to engage in concerted activity, while Section 8 makes it an unfair labor practice for an employer to violate the rights outlined in § 7 as well as "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony" about an unfair labor practice. 29 U.S.C.

§§ 157, 158(a).

607 F.3d at 89.

"In order to fall under Section 8 of the NLRA, plaintiffs must be alleging that they were retaliated against on the basis of having engaged in 'concerted protected activity.' Concerted protected activity, as defined by Section 7, requires 'that an employee's action be taken for purposes of collective bargaining or other mutual aid or protection.' ***NLRB v. City Disposal Sys. Inc.,*** 465 U.S. 822, 830 (1984) (internal quotation marks omitted)." ***Id***.

"The federal court of last resort has dealt with the outer limit of NLRA's preemption on many occasions. Its penultimate case addressing the doctrine's application is ***San Diego Building Trades Council, Etc. v. Garmon***. There, the Court developed the standards for gauging the preemptive effect of the NLRA. If an activity is arguably protected or prohibited by the NLRA, state regulation of that activity must yield, but state statutes may nonetheless be sustained if the conduct in question (1) is only of peripheral concern to the congressional purpose in enacting the NLRA or (2) touches interests 'deeply rooted' in local feeling and responsibility.

"As with most legal gauges, the ***Garmon*** test is much easier to articulate than to apply. The very Court that sired it has candidly stated that confusion in charting the boundary of the NLRA preemption sweep might be the result of its own pronouncements which apply the ***Garmon***-fashioned criteria." ***Dority v. Green Country Castings Corp.***, 727 P.2d 1355, 1358 (Okla. 1986), citing ***Amalgamated Ass'n of St., E.R. & M.C. Emp. v. Lockridge***, 403 U.S. 274, 286 (1971) (footnotes omitted).

In ***Williams v. Watkins Motor Lines, Inc.***, 310 F.3d 1070 (8th Cir. 2002), the Eighth

Circuit considered what constituted concerted activity within the meaning of 29 U.S.C. § 157, thus precluding review by the district court. "The National Labor Relations Act gives employees the right to engage in concerted activities for the purposes of mutual aid and protection. 29 U.S.C. § 157. This language contemplates a context where employees are organizing or have organized, and need to be protected from retaliatory measures by their employer. 29 U.S.C. § 102." 310 F.3d at 1071-72.

"The NLRA is silent as to what precisely constitutes 'concerted activity.' *N.L.R.B. v. City Disposal Systems, Inc.*, 465 U.S. 822, 831 (1984)." *Id*. at 72.

"NLRA preemption analysis has developed into two distinct doctrines, which are commonly referred to as *Garmon* and *Machinists*[7] preemption. *Thunderbird Mining Co. v. Ventura*, 138 F.Supp.2d 1193, 1196 (D. Minn. 2001). *Garmon* preemption, which the appellees suggest is applicable here, 'protects the jurisdiction of the National Labor Relations Board ... by displacing state jurisdiction over conduct which is "arguably within the compass of § 7 or § 8 of the Act."' *Id*. (quoting *St. Thomas-St. John Hotel & Tourism Assoc. v. United States Virgin Islands*, 218 F.3d 232, 239 (3rd Cir. 2000)). The *Garmon* doctrine supports the theory that Congress has an overriding interest in nationally uniform application of the NLRA, rather than in protecting particular conduct of private bargaining parties. *St. Thomas*, 218 F.3d at 239." *Id*.

"One component of protected concerted activity is 'concertedness.' Calvin Sharpe, "By Any *Means Necessary*"-Unprotected Conduct and Decisional Discretion Under the

---

[7] *Lodge 76, Int' Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976).

18

*National Labor Relations Act,* 20 Berkeley J. Emp. & Lab. L. 203, 207-8 (1999). This component requires some sort of group activity; individuals acting on their own behalf are not engaged in concerted activity. *Id.* The issue has been raised whether actions taken individually, but presumed to be of interest and benefit to other employees, should be considered concerted activity under a 'constructive concerted activity' theory. **NLRB v. City Disposal Systems, Inc.,** 465 U.S. 822 (1984). The NLRB, however, does not recognize such individual activity as concerted.[8]" **Id.**

In **Williams**, the Eighth Circuit dealt with an over the road truck driver who refused to accept a load that exceeded state weight limits and was terminated. The Eighth Circuit said that it had no reason to describe adherence to applicable law as concerted activity. **Id.** at 1073.

Despite the defendant's efforts to attempt to characterize Mr. Frohnapfel's concern over water quality and adherence to West Virginia's water quality laws as concerted activity, this Court simply cannot agree. While the defendant points out that Frohnapfel was asked to take action on behalf of other employees to address hazardous and unsafe conditions and to eliminate ongoing violations of the NPDES Permit and contends that this constitutes concerted activity, the fact remains that the plaintiff, assuming his allegations are true (as we must), was attempting to protect the environment and to remedy hazardous conditions at the plant. This is conduct which is only a peripheral concern to the

---

[8] In a NLRB decision involving a single employee who resisted driving an unsafe truck, the NLRB rejected the claim that such activity was "concerted," even though the employee was asserting contractual rights. *See* **Meyers Indus. Inc.,** 281 NLRB 882 (1986).

congressional purpose in enacting the NLRA and touches interests 'deeply rooted' in local feeling and responsibility. As noted by the West Virginia Supreme Court, protection of West Virginia's waterways and water supply are of substantial importance to the citizens of this state. Accordingly, this Court finds that the defendant's last argument also fails to support dismissal.

## CONCLUSION

Defendants ArcelorMittal Weirton LLC ("AM Weirton") and ArcelorMittal USA LLC's Motion to Dismiss **[Doc. 7]**, filed April 11, 2014, is **DENIED**.

In light of the above, the previously-imposed stay is hereby **ORDERED LIFTED**. In addition, the May 21, 2014, Scheduling Order **[Doc. 25]** is hereby **VACATED**, and the parties are further **ORDERED** pursuant to Fed. R. Civ. P. 16(b) and 26(f) to meet in person or by telephone on or before May 15, 2015, to discuss scheduling deadlines. Thereafter, the parties shall submit to this Court a written report on the results of the initial planning meeting and a completed Scheduling Order Checklist, which is attached hereto, on or before May 29, 2015. Upon receipt of the meeting report, a Scheduling Order will issue.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein along with copies of this Court's Scheduling Order Checklist.

**DATED:** April 22, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


_____
Plaintiff(s),

v.

_____                    Civil Action No. _____
Defendant(s).

## **SCHEDULING ORDER CHECKLIST**

ATTORNEYS

1. INTERMEDIATE PRETRIAL CONFERENCE

                                        _____

2. MEDIATION            Before -      _____

3. JOINDER AND AMENDMENTS          _____

4. EXPERT DISCLOSURE

        a. With Burden              _____

        b. Without Burden           _____

5. EXAMINATION/INSPECTIONS

                                        _____

6. DISCOVERY COMPLETION            _____

7. DISPOSITIVE MOTIONS             _____

                                        _____ Responses

                                        _____ Replies

8. PRETRIAL DISCLOSURES, FED R. CIV PRO 26(a) 3

_____

        a. Objections       _____

9. JURY INSTRUCTIONS, VOIR DIRE and VERDICT FORMS

_____

        a. Objections       _____

10. MOTIONS IN LIMINE       _____

        a. Objections       _____

11. BIOGRAPHICAL SKETCHES     _____

12. JOINT FINAL PRETRIAL CONFERENCE ORDER

_____

13. FINAL PRETRIAL CONFERENCE   _____

14. Trial                  _____

    (If non-jury trial, Proposed Findings of Fact
    and Conclusions of Law are to be filed with Court
    and opposing counsel _____)